UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                     No.  CR 09-2962 WJ

MARVIN LOPEZ-AGUILAR,
PABLO DE LEON ORTIZ,
and FRANCISCO MELGAR-CABRERA,

      Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DIPLOMATIC
NOTES (DOC. 312);
DENYING DEFENDANT'S MOTION FOR ORDER EXCLUDING LIFE
IMPRISONMENT AND THE DEATH PENALTY (DOC. 310);
and
DENYING IN PART and DEFERRING RULING IN PART DEFENDANT'S MOTION
FOR DISCLOSURE OF *BRADY-GIGLIO* MATERIAL (DOC. 337).**

      THIS MATTER comes before the Court following oral argument on the following motions:

(1) Defendant's Motion to Compel Production of Diplomatic Notes, filed February 27, 2015 **(Doc. 312)**;

(2) Defendant's Motion for Order Excluding Life Imprisonment and the Death Penalty from the Sentences the United States Can Seek and the Court Can Impose, filed February 27, 2015 **(Doc. 310);** and

(3) Defendant's Motion for Disclosure of *Brady-Giglio* Material, filed May 18, 2015 (**Doc. 337**).

      Having reviewed the parties' briefs and applicable law, and heard counsel's arguments on these matters, the Court finds that Defendant's Motion to Compel Production of Diplomatic Notes (Doc. 312) is DENIED; Defendant's Motion for Order Excluding Life Imprisonment and the Death Penalty from the Sentences the U.S. Can Seek and the Court Can Impose (Doc. 310) is

also DENIED; and that Defendant's Motion for Disclosure of *Brady-Giglio* Material (Doc. 337) is GRANTED in part, DENIED in part and DEFERRED in part for ruling.

## BACKGROUND

Mr. Melgar-Cabrera is a Salvadoran citizen who was extradited to the United States from El Salvador on May 20, 2013. The United States had petitioned the government of El Salvador for Mr. Melgar-Cabrera's extradition so that he could be tried for his alleged involvement in multiple crimes that he allegedly participated in in Bernalillo County, New Mexico in June 2009. El Salvador granted the extradition request in a court Order ("Salvadoran Order") for two offenses: (1) Committing Aggravating Murder While Using and Carrying a Firearm During and In Relation to A Crime of Violence And Aiding and Abetting, and (2) Interference with Interstate Commerce By Robbery and Violence and Aiding and Abetting.

The "principle of specialty" provides individuals who are extradited to face charges in the United States with certain protections. *See United States v. Rauscher*, 119 U.S. 407, 424 (1886). These protections are set out in treaties and can also be found in the documents of extradition. *See, e.g., United States v. Abello-Silva*, 948 F.2d 1168, 1174, 1175-76 (10th Cir. 1991) (principle of specialty doctrine "prohibits the requesting nation from prosecuting the extradited individual for any offense other than that for which the surrendering country agreed to extradite"), *abrogated on other grounds by United States v. Bagley*, 473 U.S. 667 (1985). "[T]he extradition of individuals occurs subject to any limitation either country imposes." *Abello-Silva*, 948 F.2d at 1174; *see also United States v. Baez*, 349 F.3d at 92 ("Based on international comity, the principle of specialty generally requires a country seeking extradition to adhere to any limitations placed on prosecution by the surrendering country.").

I.      **Defendant's Motion to Compel Production of Diplomatic Notes (Doc. 312)**

Defendant seeks production of certain diplomatic notes that were referenced in the Salvadoran Order, and which have not been produced in discovery. Federal Rule of Criminal Procedure 16(a)(1)(E)(i) requires that "upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph. . . papers, documents, data . . .or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense."

Defendant adds that he is entitled to the notes under *Brady v. Maryland*, 373 U.S. 83, 87 (1963) as evidence that is favorable to him and is "material either to guilt or to punishment;" as well as under due process. While Defendant's motion states that he is entitled to the diplomatic notes under Rule 16(a), at the hearing, counsel acknowledged that he was not presenting an argument on that basis because the notes were discoverable on other grounds and thus the Court's analysis here will be limited to those grounds. The Government contends that the contents of all the notes have been disclosed either in the Salvadoran Order or other documents related to the extradition. Defendant claims that he should be able to review the notes for himself, or at least have the Court conduct an in camera review because the notes could be relevant to the exclusion of a life sentence.

The Court agrees with the Government that there is no merit to Defendants arguments under either *Brady* argument or due process. The Government has represented that extradition was conditioned only on taking the death penalty off the table, and it is not disputed that Defendant has been apprised of the possible maximum sentence at his arraignment, which is a life sentence. Defendant argues that if his extradition were also conditioned on sentencing limitations regarding a life sentence (or a sentence that would constitute a life sentence), his situation would be in a different posture so that the information he received at arraignment

3

regarding a potential sentence would not apply. This is true, but only if Defendant's extradition did in fact include a sentencing limitation regarding the length of a potential sentence. However, as the Court discusses in the next section, Defendant's extradition was premised only an agreement not to impose the death penalty. The Government is not obligated to disclose the diplomatic notes to Defendant, nor has Defendant made a showing on any basis that he is entitled to more information on these notes than has already been made available to him. Therefore, Defendant's motion is denied.

**II.     Defendant's Motion for Order Excluding Life Imprisonment and the Death Penalty from the Sentences the U.S. Can Seek and the Court Can Impose (Doc. 310).**

Defendant claims that El Salvador granted extradition on the condition that the Government would not seek the death penalty, and would also avoid the "execution of a life imprisonment; as well as avoid the execution of an excessive-long term imprisonment that may become a life imprisonment," referring to portions of the Salvadoran Order. Ex. 1, Doc. 310-2 at 13-14 and 18. Defendant seeks an Order by this Court to the effect that sentencing limitations other than the imposition of the death penalty were conditions of extradition. Defendant claims that if he is convicted of the offenses for which he was extradited, the imposition of a sentence of life, death or one so long as to be equivalent to life, would violate the Order of Extradition and thus the principle of specialty. As mentioned above, the specialty doctrine forbids the requesting country from prosecuting an extradited defendant for more than it set out in its extradition request. *See, e.g., United States v. Abello-Silva*, 948 F.2d 1168, 1174, 1175-76 (10th Cir. 1991), *abrogated on other grounds by United States v. Bagley*, 473 U.S. 667 (1985). Defendant distinguishes his case from others where an extradited defendant argues that the domestic law of the requested country limits the sentence but there is no documentation supporting that limitation in the extradition order. *See U.S. v. Banks,* 464 F.3d 184, 191-92 (2nd Cir. 2006) (holding the

4

district court did not abuse its discretion in imposing a life sentence on an extradited defendant where the defendant argued only that the domestic law of the requested country limited the sentence and did not provide any documentation showing that the requested country sought to limit the sentence imposed).

The problem is that there is no documentation supporting any sentencing limitation in this case. As the Government notes, and Defendant concedes, at the time Salvadoran Court issued its Order, the United States had not declared about the applicability of life imprisonment. Doc. 310 at 2. Through an affidavit by the U.S. Attorney's Office, the Government represented only that it would not seek the death penalty with respect to any of the offenses charged in the Indictment. Doc. 310-3 (Valencia Aff.), ¶ 18. Nevertheless, Defendant believes that because the Salvadoran Order "contemplated" that Defendant's sentence would not constitute a life sentence, the United States is bound to honor El Salvadoran's wishes.

A.     The 1911 Treaty and the Principle of Specialty

The Government argues that any non-death penalty sentencing limitation is not binding because the United States never gave its assurance in that regard.   Extradition between El Salvador and the United States is governed by the Treaty of Extradition Between the United States of America and El Salvador ("1911 Treaty"). The language in this treaty limits specialty protection to crimes and offenses, but does not provide specialty protection in the form of sentencing limitations:

> No person shall be tried or punished for any crime or offense other than that for which he was surrendered without the consent of the Government which surrendered him, which may, if it think proper, require the production of one of the documents mentioned in Article XI of this Treaty.

Gov. Ex. 2 (1911 Treaty).  Not surprisingly, *U.S. v. Rauscher,* the seminal case on the doctrine of specialty, provides only that an extradited defendant may not be prosecuted for any *offense*

5

other than that for which the surrendering country granted extradition.   119 U.S. 407, 412 (1886).  *Rauscher* states that the doctrine deals only with the *offenses* on which an extradited defendant may be tried, and not with the enforcement of a unilateral limitation on sentencing. *See Benitez v. Garcia,* 495 F.3d 640, 644 (9th Cir. 2007) (noting that no Supreme Court decision addresses issue on unilateral attempts by extradition decree to limit a defendant's sentence). When an extradition treaty with the United States does not provide for limitations that may be desired by the requested government, in this case El Salvador, then that government must request agreement from the United States, generally through diplomatic channels.  Ex. 1, ¶ 5.   This means that *unless* the United States provides sentencing assurances or agrees to such limitations, any requirements by the Salvadoran government regarding such limitations for extradition are not binding.[1]

B.   Salvadoran Order

Defendant argues that the Salvadoran Order is explicit in the limits placed on Defendant's sentence, and relies on this language to argue that the Government cannot seek life imprisonment or the equivalent.  This contention is not borne out by any of the evidence.

In this case, the United States *did* provide assurances that the death penalty would not be sought or imposed against Defendant Melgar-Cabrera, through the use of diplomatic notes.  Ex. 1 (Heinemann Decl., ¶ 3); Deft's Ex. 3, ¶ 18 (Valencia Aff.).[2]  However, as even Defendant

---

[1] The United States has provided sentencing assurances which reflect the agreement of both sovereign parties to the extradition treaty.  *See, e.g., United States v. Casamento*, 887 F.2d 1141, 1185 (2nd Cir. 1989) (court adhered to 30-year limit imposed by Spain on defendant's extradition where United States expressly acceded to Spain's terms), *cert. denied*, 493 U.S. 1081 (1990); *United States v. Baez*, 349 F.3d 90 (2nd Cir. 2003) (finding that United States had honored specific terms of assurances given in diplomatic correspondence to request but not guarantee less than a life sentence).

[2] Government's Ex. 1 is Declaration of Tom Heinemann, who is Assistant Legal Advisor for Law Enforcement and Intelligence in the Legal Advisor's Office of the United States Dept. of State, which is responsible for the negotiation of extradition treaties.   Defendant's Ex. 3 is an Affidavit of Louis Valencia, an AUSA during the relevant time of the extradition negotiations.  *See* Ex. 3, ¶ 6.

acknowledges, the El Salvadoran government did not, prior to surrendering Mr. Melgar-Cabrera to the United States, seek assurances from our Government regarding any sentencing limitations other than the death sentence.  Govt's Ex. 1, Heinemann. Decl., ¶ 7.  The Salvadoran Order (also referred to as the Salvadoran Judicial Decision) was conveyed to the United States by diplomatic note, but that note did not ask the United States to accept this or any other condition on imprisonment.  Mere receipt by the U.S. Embassy of the diplomatic note and the Salvadoran Judicial Decision does not constitute a request for, or an agreement to, conditions on surrender.  Further, the Salvadoran Order extraditing Defendant acknowledges that while the United States (the "Requesting State") "granted express guarantee" that the death penalty would not be requested or applied, it "has not declared about the possible applicability of a life imprisonment penalty. . . ." Doc. 310-2 at 13.  The Salvadoran Order goes on to expound on the "constitutional principle" of personal freedom and how life imprisonment or its equivalent contradicts the value of human dignity:

> Therefore, in this case, even though, [sic] the extradition may be granted, the delivery of the requested individual to the Requesting State must be conditioned. If he is found responsible, the punishment shall not be a life imprisonment that for its excessive extension could be an alternative to be confined to life imprisonment. . . .

Doc. 310-2 at 13 (Salvadoran Order).   Instead of a life sentence or the equivalent, the order prescribes a term of 30 to 50 years imprisonment under Salvadoran law for the offense of Aggravated Homicide.  *Id.*   However, the "condition" expressed in the Salvadoran Order is one-sided or unilateral and so does not bind the United States, and this is where Defendant's argument fails.  *See United States v. Cuevas*, 496 F.3d 256, 262-265 (2nd Cir. 2007) (court not bound by foreign decree purporting to cap at 30 years the possible sentence for extradited defendants where United States had not agreed to such a condition); *United States v. Lehder-*

7

*Rivas,* 955 F.2d 1510, 1520-1521 (11th Cir. 1992) (applying United States law in sentencing a defendant extradited from Colombia without regard for maximum sentence under Colombian law); *United States v. Banks*, 464 F.3d 184, 191-192 (2nd Cir. 2006) (in absence of any agreement with United States limiting defendant's sentence, Dominican Republic's unilateral expectation that sentence would be limited to maximum under Dominican law would not bind United States); *United States v. Baez*, 349 F.3d 90 (2nd Cir. 2003) (finding that United States had honored specific terms of assurances given in diplomatic correspondence to request but not guarantee less than a life sentence).  It is undisputed that a "condition" on sentencing limitations regarding life imprisonment was never assured by the United States government.  In the Salvadoran Order, the Salvadoran government may have expressed its hopes that the United States would honor its wishes concerning certain sentencing limitation, but the language in the Order does not bind the United States to those expressions.

Defendant attempts to distinguish *Cuevas* and *Banks,* both cited by the Government, noting that in those cases, the issue of sentencing was never discussed.  There is actually not much of a distinction to be found between those cases and this case.  Whether there was *no* discussion of sentencing (as in *Cuevas*), or only *some* discussion on certain potential sentences, the key question is what bilateral agreements were made between the countries.[3]  Defendant also claims that the United States should have clarified ambiguities that existed as to the nature of the possible sentences that should have been clarified, as was done in *Baez.*  However, Defendant sees ambiguities where there are none, and the absence of language concerning sentencing limitations does not render that language ambiguous..  The United States agreed to assure the

---

[3] Defendant goes on to distinguish other cases cited by the Government, but none supports the notion that there is a binding agreement between the United States and the Salvadoran Government that conditions Defendant's extradition on excluding a potential life sentence or what the Salvadoran Government would consider an excessive term of imprisonment.

Salvadoran Government that it would not seek the death penalty, but did not agree to anything else.

Defendant also infers that the United States is incorrectly interpreting the Salvadoran Order and the 1911 Treaty.  Doc. 339 at 12 ("The United States believes that it is not bound by the interpretation of the El Salvadoran Supreme Court and instead is bound by its own interpretation under the 1911 Treaty").  As with Defendant's ambiguity argument, this argument has no solid footing.  The United States is governed by the 1911 Treaty, which limits specialty protection to crimes and offenses, but does not provide specialty protection in the form of sentencing limitations.  Thus, there is nothing to incorrectly "interpret" with regard to sentencing limitations in the Treaty.  Similarly, there is no incorrect "interpretation" of language in the Salvadoran Order that does not exist.  That order was issued by the Salvadoran government prior to any declaration by the United States regarding non-death penalty sentencing limitations, and thus such limitations could not be a condition on which the extradition was based.  Supporting documentation from the U.S Attorney's Office and the Department of State further indicates that the only condition related to the extradition of Defendant was the removal of the possible imposition of a death penalty.

Because there was no sentencing limitation as part of Defendant's extradition other than the death penalty, Defendant's motion is denied.

### III.     Defendant's Motion for Disclosure of *Brady-Giglio* Material, filed May 18, 2015 (Doc. 337).

Defendant seeks disclosure by the Government of "all information regarding any information obtained by the prosecution team that may be used to impeach its witnesses, including, but not limited to, any understandings or agreements it has with witnesses, any information bearing on the witnesses' immigration status and the status of their family members,

any information regarding the mental health of witnesses, any other information that would call into question the veracity or candor of the government witness, and any and all diplomatic communications regarding Defendant's extradition." The request is made pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963), *U.S. v. Giglio,* 450 U.S. 150 (1972), *U.S. v. Bagley,* 473 U.S. 667 (1985) and *Kyles v. Whitley,* 514 U.S. 419 (1995), as well as Rule 16. The various categories of the numerous specific requests are listed on pages four through seven of the motion. The Government objects to wholesale disclosure of the requested evidence, pointing out that *Brady* requires disclosure only of "material" evidence. The Government has filed a supplemental response (Doc. 349) providing a more detailed response to the requested categories of material. The Court addressed specific requests at the hearing and finds as follows:

A.  Psychological Evaluation Reports

The Court will address this category of requested information under separate Order.

B.  Material Tending to Impeach Government Witnesses

There are fifteen subparagraphs of requests in this category. The Government acknowledges that it has an ongoing duty to disclose exculpatory evidence, and this is reflected in its supplementary response, and so for most of the requests in this category, the Government agrees to provide information (such as information about witnesses' drug use and treatment, information related to *Jencks* statements, and prior convictions for crimes having an element requiring proof of a dishonest act or false statement).[4] The Government objects to other requests, however, such as copies of debriefing reports and administrative correspondence pertaining to a witness, and to the Presentence Report for one of the Government witnesses which the Government states it will produce only upon a Court Order.

---

[4] *See* 18 U.S.C. §3500 (the *Jencks* Act) and Fed.R.Crim.P. 26.2, both of which require that upon motion by the defense, the prosecution must provide to the defense any statement made by a testifying witness immediately after the witness' direct testimony.

The Government acknowledges that it is obligated to provide defense counsel with any statement made by a witness in the Presentence Report contrary to that witness' testimony under the *Jencks* Act.  The Court agrees that this disclosure, along with Defendant's version of events from his own Presentence Report, satisfies the Government's obligations pertaining to information in the Presentence Report.   Other than those two types of information, Defendant is not entitled to any matter in presentence reports pertaining to another defendant.

In paragraph (j) of the requested material in this category, Defendant appears to seek information on Government informants.  The Court agrees with the Government that defense counsel is entitled to exculpatory information but this does not include wholesale production of interview notes made by Government agents or names of confidential informants.  The Government acknowledges that it is required to disclose reports such as FBI Form 302 reports, and other reports generated by the law enforcement relevant to this case, and intends to do so.

C.	Material Tending to Be Exculpatory

Defendant seeks information concerning Freddie Palencia, who is purportedly a friend of some of the co-defendants and thus may have information about what transpired as part of the underlying events.   This information would also be within the purview of the Government's duty to disclose if such information was exculpatory or otherwise came within its legal obligations of disclosure under *Brady* or *Giglio*.

Therefore, Defendant's disclosure requests in his Motion for Disclosure of *Brady-Giglio* Material is granted in part and denied in part as herein described.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Compel Production of Diplomatic Notes (**Doc. 312**) is hereby DENIED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that Defendant's Motion for Order Excluding Life Imprisonment and the Death Penalty from the Sentences the United States Can Seek and the Court Can Impose **(Doc. 310)** is DENIED for reasons described in this Memorandum Opinion and Order; and

**IT IS FINALLY ORDERED** that Defendant's Motion for Disclosure of *Brady-Giglio* Material (**Doc. 337**) is GRANTED in part, DENIED in part, and DEFERRED in part as to Defendant's request for psychological evaluation reports which will be taken up under separate Order by the Court.

_____
UNITED STATES DISTRICT JUDGE